DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX

| | |
|---|---|
| JOE L. SMITH, )<br>  )<br>     Plaintiff, )<br>  )<br>v. )<br>  )<br>  )<br>VIRGIN ISLANDS TELEPHONE )<br>CORPORATION A/K/A INNOVATIVE )<br>TELEPHONE, )<br>     Defendant. )<br>  ) | Civil Action No. 2013-108 |

**Attorneys:**
**Karin Bentz, Esq.,**
St. Thomas, U.S.V.I.
   *For the Plaintiff*

**Bailey A. Calhoun, Esq.,**
**Charles E. Engeman, Esq.,**
St. Thomas, U.S.V.I.
   *For the Defendant*

## MEMORANDUM OPINION

**Lewis, Chief Judge**

THIS MATTER is before the Court on Defendant's "Motion to Stay Litigation of this Matter Pending Arbitration of Plaintiff's Contractual Union Grievance" (Dkt. No. 10), to which Plaintiff has not filed an Opposition. For the following reasons, the Motion will be granted and the case stayed pending arbitration.

### I.   BACKGROUND

Plaintiff was employed by Defendant for more than twenty years, working a number of different jobs over the course of his employment. He contends that he suffered multiple injuries throughout his employment, primarily due to exposure to fiberglass particles in the systems he

1

worked on as an installer and repairman. (Dkt. No. 8).  Plaintiff asserts that he made complaints to the Occupational Safety and Health Administration ("OSHA"), the federal agency charged with enforcing health and safety regulations, regarding workplace safety and the respiratory risks of fiberglass exposure.  *Id*.  Plaintiff alleges that Defendant retaliated against him for reporting his concerns to OSHA, and eventually terminated him due to: medical problems he suffers as a result of his work; his age; and for reporting alleged safety hazards to OSHA.

Plaintiff filed suit on November 8, 2013, and filed a First Amended Complaint on January 16, 2014.  (Dkt. Nos. 1, 8).  In the First Amended Complaint Plaintiff asserts claims for: 1) violation of the Americans with Disabilities Act, 42 U.S.C. § 12101; 2) violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621; and 3) violation of the Virgin Islands Whistleblower Act, 10 V.I.C. § 122.  He seeks damages suffered as a result of the alleged discrimination and retaliation, as well as punitive damages and equitable relief.  (Dkt. No. 8).

In lieu of answering, Defendant filed the instant Motion, arguing that the parties' Collective Bargaining Agreement ("CBA") provides for arbitration as a means of resolving disputes, and that this action should be stayed pending resolution of a grievance Plaintiff submitted to binding arbitration in October 2013. (Dkt. No. 11 at 2-3).  Defendant contends that the initiated arbitration will require adjudication of the same facts, involves the same claims, and seeks the same remedies as the instant suit, and thus proceeding with this suit "would be a waste of judicial resources." (Dkt. No. 11 at 4).  Plaintiff has not filed an opposition or otherwise responded to Defendant's Motion.  The time within which to do so expired over six months ago.  L.R.Civ. P. 7.1(e).

The Court finds that the CBA is a valid arbitration agreement and encompasses Plaintiff's claims, and that a stay is in the interest of judicial economy and will conserve resources.

Accordingly, the Court will stay the matter in this Court pending arbitration.

## II. DISCUSSION

### A. Applicable Law

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 3, has "established a strong federal policy in favor of the resolution of disputes through arbitration" if possible. *Alexander v. Anthony Int'l., L.P.,* 341 F.3d 256, 263 (3d Cir. 2003); *see Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.,* 460 U.S. 1, 24 (1983) (presumption in favor of arbitration where a valid agreement to arbitrate exists). The United States Supreme Court has determined that the FAA represents "a congressional declaration of a liberal federal policy favoring arbitration" when the parties agree to arbitrate. *Moses H. Cone,* 460 U.S. at 24; *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 89 (2000).[1] "Arbitration is meant to streamline proceedings, reduce costs, and conserve resources." *In re Pharmacy Ben. Managers Antitrust Litig.,* 700 F.3d 109, 117 (3d Cir. 2012) (citing *Nino v. Jewelry Exch., Inc.,* 609 F.3d 191, 209 (3d Cir. 2010)).

The Court should thus stay litigation pending arbitration if the claims asserted in the litigation are arbitrable. *Lloyd v. Hovensa, LLC.,* 369 F.3d 263, 269 (3d Cir.2004). To determine arbitrability, the Court first looks to "whether a valid agreement to arbitrate exists and [second,] whether the particular dispute falls within the scope of that agreement." *Trippe Mfg. Co. v. Niles Audio Corp.*, 401 F.3d 529, 532 (3d Cir. 2005) (citing *PaineWebber, Inc. v. Hartmann,* 921 F.2d 507, 511 (3d Cir.1990), *overruled on other grounds by Howsam v. Dean Witter Reynolds,* 537 U.S. 79, 85 (2002)); *see also Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 160 (3d Cir. 2009). The "FAA instructs courts to refer to principles of applicable state law when determining the existence and scope of an agreement to arbitrate." *Nat'l Fin.*

---

[1] The Virgin Islands Supreme Court has also recognized the strength of the federal policy favoring arbitration. *See Martinez v. Colombian Emeralds, Inc.*, 2009 WL 578547, *7 (V.I. March 4, 2009) (citing *Lloyd v. HOVENSA, LLC.*, 369 F.3d 263, 270 (3d Cir. 2004)).

3

*Partners Corp. v. Cunning*, 2009 WL 1939818, *3 (D.V.I. July 7, 2009).

If a valid agreement exists, the Court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3. Accordingly, where arbitration is an agreed-upon means of resolving controversies, a suit filed in this Court should be stayed pending a related arbitration. *See Teamsters Local Union No. 764 v. J.H. Merritt & Co.,* 770 F.2d 40, 42 (3d Cir. 1985); *Gov't of the V.I. v. 0.459 Acres of Land Consisting of the Following: Parcel No. 6A Estate Thomas Kings Quarter & Parcel No. 9A, Estate Thomas, Virgin Islands,* 286 F. Supp. 2d 501, 511 (D.V.I. 2003); *Martinez v. Colombian Emeralds, Inc.*, 2009 WL 578547, *7 (V.I. March 4, 2009).

    B. Analysis

        i.   The Existence of a Valid Arbitration Agreement

In order for the FAA's provisions allowing for a stay of litigation to apply, there must be a valid arbitration agreement. 9 U.S.C. § 3. Here, the United Steelworkers AFL-CIO-CLC Union ("Union") and Defendant entered into a CBA, effective for the period October 1, 2012 through September 30, 2015. (Dkt. No. 11, Ex. 1). In accordance with the CBA, the Union filed a grievance regarding Plaintiff's termination. (Dkt. No. 11, Ex. 2). Plaintiff is a Union member, and accordingly was represented by the Union through the CBA's grievance process. (Dkt. No. 11, Exs. 2-4). The grievance proceeded through the process outlined in the CBA, culminating in a Third Step Grievance Response denying the grievance. (Dkt. No. 11, Ex. 3). Following the grievance process, the Union filed a request for arbitration, also in accordance with the process set forth by the CBA. (Dkt. No. 11, Ex. 4). Defendant represents that this arbitration is currently ongoing. (Dkt. No. 11 at 3).

Arbitration is a matter of contract, and in determining whether an agreement to arbitrate

is valid, courts apply the laws of the state of where the contract was formed. *Teamsters Local,* 770 F.2d at 42; *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 944 (1995); *Nat'l Fin. Partners Corp.,* 2009 WL 1939818 at *3. In the Virgin Islands, the law requires a "bargain in which there is a mutual assent to the exchange, and consideration" for contract validity. *Morales v. Sun Constructors, Inc.*, 541 F.3d 218, 221 (3d Cir. 2008); *Kendall v. Superior Court, Gov't of the Virgin Islands*, 2013 WL 785518 (D.V.I. Mar. 1, 2013). Assent is measured by outward expression. *Morales*, 541 F.3d at 221; *Fitz v. Islands Mech. Contractor, Inc.*, 2010 WL 2384585, *5 (D.V.I. June 9, 2010). In an arbitration agreement, where both parties agree to be bound by any elected arbitration, consideration exists as a matter of law. *Blair v. Scott Specialty Gases*, 283 F.3d 595, 603-04 (3d Cir. 2002) (citing *Michalski v. Circuit City Stores, Inc.,* 177 F.3d 634, 637 (7th Cir.1999) and *Johnson v. Circuit City Stores, Inc.,* 148 F.3d 373, 378 (4th Cir.1998)); *see also Plaskett v. Bechtel Int'l, Inc.*, 243 F. Supp. 2d 334, 338 (D.V.I. 2003).

Here, mutual assent to the CBA is evidenced by the preamble and Article II, which state that "the Company and the Union mutually agree" to the CBA's provisions, which are intended "to provide procedures for the prompt and equitable adjustment of grievances." (Dkt. No. 11, Ex. 1 at 4). The parties' mutual assent is also apparent from the parties' participation in a three step grievance procedure outlined in Article XVI which states that "all grievances will be settled in accordance with the following [three-step] procedure." (Dkt. No. 11, Ex. 1 at 33; Dkt. No. 11 Ex. 3).

Article XVII of the CBA further provides that "[g]rievances *may* be submitted to arbitration for final binding determination," after the internal grievance procedure is followed. (Dkt. No. 11, Ex. 1 at 36) (emphasis added). The CBA then sets forth the arbitration and expedited arbitration procedures available, noting that "the decision of the Arbitrator shall settle

5

the grievance, and the Company and the Union agree to abide by such decision." (Dkt. No. 11, Ex. 1 at 38).

In entering into the CBA, both parties agreed to be bound by an internal grievance procedure, followed by binding arbitration "if either party decides to arbitrate." Thus, consideration exists for the bargain. *See Blair*, 283 F.3d at 603-04. In view of the mutual assent and consideration, the Court finds that the CBA is a valid agreement. *See Morales*, 541 F.3d at 221.

### ii. The Scope of the Agreement to Arbitrate

The second prong of the Court's inquiry asks whether Plaintiff's claims in the instant suit are within the scope of the CBA. *See Trippe Mfg. Co.*, 401 F.3d at 532. If the claims fall within the scope of the agreement, then the matter may be stayed pending arbitration. *Id.*

Plaintiff's First Amended Complaint asserts that: he was discriminated against on the basis of his age and disability (Counts I and II), and that Defendant unjustly terminated him in retaliation for the filing of complaints with OSHA (Count III). The CBA defines a grievance—which is to be resolved through the CBA's grievance procedure and arbitration, if desired—as "any complaint, difference, dispute or request that involves the interpretation or application of, or compliance with the provisions of this Agreement." (Dkt. No. 11, Ex. 1 at 33). Article VII Section 7 of the CBA states that Defendant's policy is "not to discriminate against any employee on account of race . . . age, religion or disability," and Section 8 states that "there shall be no discrimination, restraint or coercion . . . . for exercising [rights] as a Union member." (Dkt. No. 11, Ex 1 at 10). Article XV governs the Defendant's right to "discharge or suspend an employee *for just cause*," and provides that if a discharge-related grievance is resolved in arbitration, the arbitrator has the right to "make [the employee] whole." (Dkt. No. 11, Ex 1 at 32) (emphasis

added). The CBA also includes agreements regarding medical disputes, bereavement, sick leave, and on-the-job injuries—all of which appear in the factual background of Plaintiff's First Amended Complaint. (Dkt. No. 11, Ex. 1 at 2-4; Dkt. No. 8).

Plaintiff's discrimination and retaliation claims call into question Defendant's compliance with the anti-discrimination and anti-retaliation provisions of Article VII. The arbitration procedure in Article XVII—when selected by either party—is designed to resolve grievances arising within the scope of the CBA after the parties have complied with the grievance procedure in Article XVI. (Dkt. No. 11, Ex. 1 at 33-36). Accordingly, the Court finds that the claims asserted in Plaintiff's First Amended Complaint are within the scope of the CBA.

### iii. Application of the FAA to Plaintiff's Claims

By the CBA's express language, either party to the agreement maintains the option to arbitrate claims involving the CBA's provisions, though neither party is required to do so. (Dkt. No. 11, Ex. 1 at 36). Here, Plaintiff elected to file an arbitration demand to determine the grievance stemming from his allegedly pretextual termination. (Dkt. No. 11, Ex. 4). The arbitration of Plaintiff's grievance thus involves at least some of the same facts as the instant suit. (Dkt. No. 11, Exs. 2-4). The damages sought in arbitration are also—at least in part—duplicative of the damages sought in the instant suit. (Dkt. No. 8 at 8; Dkt. No. 11, Ex. 4).

The FAA encourages courts to stay litigation pending arbitration in order to promote economy, efficiency, judicial resource management, and streamlined adjudication processes. *In re Pharmacy,* 700 F.3d at 117; *Nino,* 609 F.3d at 209. Here, a stay of litigation pending arbitration of Plaintiff's grievance will promote judicial economy and efficiency and conserve resources, including for the parties, given that the same facts underlie both the grievance and the instant suit. Accordingly, the Court will grant Defendant's Motion.

### III. CONCLUSION

For the foregoing reasons, the "Motion to Stay Litigation of this Matter Pending Arbitration of Plaintiff's Contractual Union Grievance" will be granted and the proceedings stayed pending arbitration. An appropriate Order accompanies this Opinion.

Date: September 8, 2014                             _____/s/_____
                                                    WILMA A. LEWIS
                                                    Chief Judge